---

ZUFFA, LLC, d/b/a THE ULTIMATE )
FIGHTING CHAMPIONSHIP (UFC),
                                )
    Plaintiff,              )
                                )
v.                              )      No. 10-02844
                                )
BLACK DIAMOND, INC. d/b/a THE   )
BLACK DIAMOND                   )
                                )
    Defendant.              )

---

## ORDER GRANTING PLAINTIFF'S MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT

---

Before the Court is the March 2, 2011 Motion for Entry of Default Judgment Against Defendant filed by Plaintiff Zuffa, LLC ("Zuffa"), d/b/a The Ultimate Fighting Championship ("UFC"). (Mot. for Default J., ECF No. 11.) Defendant Black Diamond, Inc. d/b/a The Black Diamond ("Black Diamond") has not responded. For the following reasons, Zuffa's Motion is GRANTED.

## I.  Background[1]

Zuffa is a Nevada corporation with its principal place of business in Las Vegas. (See Compl. ¶ 5, ECF No. 1.) Zuffa is

---

[1] The background facts come from the factual allegations in Zuffa's complaint, ECF No. 1, and other pleadings and incorporated attachments, which are deemed admitted because of Black Diamond's default. See Murray v. Lene, 595 F.3d 868, 871 (8th Cir. 2010); United States v. Conces, 507 F.3d 1028, 1038 (6th Cir. 2007); Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006).

the owner of the UFC #111 broadcast ("the Broadcast"), which aired on March 27, 2010, via closed circuit television and encrypted satellite signal. (Id. ¶ 16.) Prior to the Broadcast, Zuffa granted licenses to several Tennessee businesses for the right to exhibit the Broadcast. (Id. ¶ 17.) Black Diamond, which is a business entity with its principal place of business in Memphis, Tennessee, did not purchase a license from Zuffa to exhibit the Broadcast. (Id. ¶¶ 11, 18.)

Zuffa alleges that Black Diamond unlawfully intercepted, received, and descrambled the Broadcast satellite signal on March 27, 2010. (Id.) Zuffa alleges that Black Diamond either: (1) spliced a coaxial cable or redirected a wireless signal from an adjacent establishment, (2) commercially misused a cable signal by falsely registering as a residence, or (3) used a lawfully obtained satellite or cable box from a private residence. (Id. at ¶ 19.) Zuffa alleges that Black Diamond pirated the Broadcast "willfully and for purposes of direct or indirect commercial advantage or private financial gain." (Id. ¶ 26.)

Prior to the Broadcast, Zuffa retained independent auditors to find establishments that were showing the Broadcast without a license. (Ike Lawrence Epstein Dep. ¶ 5, ECF 15-1.) On March 27, 2010, Ted Scott, an independent auditor, visited The Black Diamond, a bar in Memphis, Tennessee, and observed the Broadcast

playing on two of the three televisions in the bar. (Privacy Aff. Ex. C, ECF No. 15-1.) Scott noted that "Pay Per View" logos were not visible on the Broadcast and that between 30 and 36 people were in attendance. (Id.) The Black Diamond's occupancy limit was 88 customers. (Ike Lawrence Epstein Dep. ¶ 8, ECF 15-1.) Scott paid a $5 cover charge to gain admission, and he spent over an hour in the establishment. (Privacy Affidavit Ex. C, ECF No. 15-1.) Zuffa has submitted a sworn affidavit from Ted Scott. (Id.)

On November 11, 2010, Zuffa brought this action against Black Diamond and Francis J. Scott, who allegedly had control of The Black Diamond on March 27. (Compl. ¶ 2-3.) Zuffa's claims against Scott were dismissed on March 2, 2011. (See Order of Dismissal, ECF No. 17.) Zuffa contends that Black Diamond's actions constitute (1) the unauthorized reception and publication of communications in violation of the Federal Communications Act, 47 U.S.C. § 605(a), (2) the unauthorized reception, interception, and exhibition of "any communications service offered over a cable system[,] such as the transmission for which plaintiff had the distribution rights" in violation of the Federal Communications Act, 47 U.S.C. § 553, and (3) that Black Diamond publically exhibited the Broadcast without paying the appropriate licensing fee to Zuffa in violation of 17 U.S.C. § 501(a). (See id. ¶¶ 15-40.)

On December 20, 2010, Zuffa properly served Black Diamond with copies of the summons and the complaint. (See Proof of Service, ECF No 10.) Zuffa filed a Notice of Intention to Move for Default on January 25, 2011. (See Notice by Zuffa, LLC, ECF No. 11.) On March 1, 2011, the Clerk entered default against Black Diamond under Federal Rule of Civil Procedure 55(a). (See Default, ECF No. 14.) Zuffa filed its Motion for Entry of Final Default Judgment on March 2, 2011. (Mot. for Default J.) Zuffa attached affadvits

## II. Jurisdiction

A court's default judgment is invalid unless it has proper jurisdiction. See, e.g., Citizens Bank v. Parnes, 376 F. App'x 496, 501 (6th Cir. 2010) ("Personal jurisdiction over a defendant is a threshold issue that must be present to support any subsequent order of the district court, including entry of the default judgment.") (citing Kroger Co. v. Malease Foods Corp., 437 F.3d 506, 510 (6th Cir. 2006)).

Courts are obligated to consider subject-matter and personal jurisdiction, but not defects in venue, before entering default judgment. Compare In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) (holding that a district court properly raised the issue of personal jurisdiction sua sponte), and Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986) (per curiam) ("[W]hen entry of a default judgment is sought against a party

4

who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."), and Columbia Pictures Indus. v. Fysh, No. 5:06-CV-37, 2007 U.S. Dist. LEXIS 11234, at *3-4 (W.D. Mich. Feb. 16, 2007) (considering and finding subject-matter and personal jurisdiction before entering a default judgment), with Rogers v. Hartford Life & Accident Ins. Co., 167 F.3d 933, 942 (5th Cir. 1999) ("The Supreme Court has made clear that if a party defaults by failing to appear or file a timely responsive pleading, the party waives defects in venue.") (citations omitted), and Williams, 802 F.2d at 1202 ("[I]f a party is in default by failing to appear or to file a responsive pleading, defects in venue are waived, a default judgment may be validly entered and the judgment cannot be attacked collaterally for improper venue." (citing Hoffman v. Blaski, 363 U.S. 335, 343 (1960)).

### A. Subject Matter Jurisdiction

Congress has specifically granted federal question jurisdiction for claims of copyright. See 28 U.S.C. § 1338(a) (providing for jurisdiction over any action arising under a federal law relating to copyrights and trademarks). Federal question jurisdiction exists for any claims arising under the laws of the United States. See 28 U.S.C. § 1331. Zuffa has alleged violations of the Federal Communications Act and the

Copyright Act. See 47 U.S.C. §§ 605(a), 553; see also 17 U.S.C. ¶ 501(a); (Compl. ¶¶ 15-40). The Court has subject-matter jurisdiction over Zuffa's claims. See 28 U.S.C. §§ 1331, 1338(a).

### B. Personal Jurisdiction

"Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state." Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002); see also Gerber v. Riordan, 649 F.3d 514, 517 (6th Cir. 2011); Third Nat'l Bank v. WEDGE Group, Inc., 882 F.2d 1087, 1089 (6th Cir. 1989). "General jurisdiction is proper only where a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." Parsons, 289 F.3d at 871. "'Presence' in the state in this sense has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given." Int'l Shoe Co. v. Wash., 326 U.S. 310, 317 (1945) (quotation omitted).

Black Diamond's contacts to Tennessee are "continuous and systematic" because it is organized under Tennessee law and its

principal place of business is in Tennessee.  <u>Parsons</u>, 289 F.3d
at 871.  Zuffa has alleged that Black Diamond "has an office in
[Tennessee], is licensed to do business there . . . [and]
directs its business operations from [Tennessee]."  <u>Id.</u> at 873.
Copies of the Summons and Complaint were served on Black Diamond
at its Tennessee address on December 20, 2010.  (<u>See</u> Proof of
Service, ECF No. 10.)  The Court has personal jurisdiction over
Black Diamond.

**III.    Standard of Review**

Federal Rule of Civil Procedure 55(b)(2) governs default
judgment.  <u>See</u> Fed. R. Civ. P. 55(b).  "Once a default is
entered against a defendant, that party is deemed to have
admitted all of the well pleaded allegations in the complaint,
except those relating to damages."  <u>Microsoft Corp. v. McGee</u>,
490 F. Supp. 2d 874, 878 (S.D. Ohio 2007) (citing <u>Antoine v.
Atlas Turner, Inc.</u>, 66 F.3d 105, 110-11 (6th Cir. 1995)); <u>see
also</u> Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one
relating to the amount of damages—is admitted if a responsive
pleading is required and the allegation is not denied.").
Unlike factual allegations, "legal conclusions are not deemed
admitted as a result of the entry of default."  <u>Krowtoh II LLC
v. Excelsius Int'l Ltd.</u>, No. 04-505-KSF, 2007 WL 5023591, at *3
(E.D. Ky. Dec. 17, 2007) (citations omitted).

Because the Clerk entered default against Black Diamond on March 1, 2011 (see Default, ECF No. 14), Black Diamond is deemed to have admitted the factual allegations in Zuffa's complaint, other than those relating to damages. If the factual allegations provide a sufficient legal basis, the Court will enter a default judgment and conduct an inquiry to determine damages and other relief. See Coach, Inc. v. Cellular Planet, No. 2:09-cv-00241, 2010 U.S. Dist. LEXIS 45087, at *7 (S.D. Ohio May 7, 2010) (citing Arista Records, Inc. v. Beker Enters., 298 F. Supp. 2d 1310, 1311-12 (S.D. Fla. 2003)).

## IV. Analysis

### A. Liability

Zuffa's allegations establish that Black Diamond violated the Federal Communications Act, 47 U.S.C §§ 605(a) and 553, as well as 17 U.S.C. § 501(a).

#### 1. Section 605(a)

Because a default judgment has been entered, Black Diamond admits "to receiving the [Broadcast] via satellite transmission and displaying it at [its] bar consistent with a violation under 605(a)." Joe Hand Promotions, Inc. v. Easterling, No. 4:08 CV 1259, 2009 U.S. Dist. LEXIS 52517, at *9 (N.D. Ohio June 22, 2009). Broken up into distinct violations,

> The first sentence of § 605(a) prohibits persons "receiving, assisting in receiving, transmitting, or assisting in transmitting . . . any interstate or

foreign communication by wire or radio" from divulging or publishing the contents of that communication except in specified, authorized ways. The second sentence prohibits any "person not being authorized by the sender" from "intercept[ing] any radio communication and divulg[ing] . . . [its] contents . . . to any person." The third sentence prohibits any "person not being entitled thereto [from] receiv[ing] or assist[ing] in receiving any interstate or foreign communication by radio and us[ing] such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto."

Id. (quoting International Cablevision, Inc. v. Sykes, 75 F.3d 123, 129-30 (2d Cir. 1996)). Each distinct sentence in § 605(a) prohibits the unauthorized publication or use of wire or radio communications. J & J Sports Prods. v. Leaghty, No. 4:10CV2982011, 2011 U.S. Dist. LEXIS 87971, at *6-9 (N.D. Ohio June 23, 2011), adopted by J & J Sports Prods. v. Leaghty, No. 4:10-CV-0298, 2011 U.S. Dist. LEXIS 87972, at *2 (N.D. Ohio Aug. 8, 2011); see also United States v. One Macom Video Cipher II, SN A6J050073, 985 F.2d 258, 260 (6th Cir. 1993).

The third sentence of § 605(a) provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." This language "only applies to persons who were never authorized to be in possession of the communication in the first place." Nat'l Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 914 (6th Cir. 2001). "[C]ourts

have applied [§ 605] to cases involving 'encrypted cable programming from satellite transmissions.'" Leaghty, 2011 U.S. Dist. LEXIS 87971, at *6-9 (quoting J & & Sports Prods. V. Lukes, No. 1:10 CV 00535, 2010 U.S. Dist. LEXIS 110421, at *1 (N.D. Ohio Oct. 18, 2011) (additional citations omitted)); see also Nat'l Satellite Sports, Inc., 253 F.3d at 917 ("[T]he legislative history of the amendments to the Communications Act in 1984 and 1988 reveals that Congress intended to bring cable and satellite communications under the protection of the Act. . . ").

In Nat'l Satellite Sports, Inc., 253 F.3d at 916, the Sixth Circuit held that Time Warner, a major cable conglomerate, did not violate the third sentence of § 605(a) because the corporation "was contractually authorized to receive the communication of the event . . . and to further relay that communication to its residential customers in the area." Id. at 917. Nevertheless, Time Warner was liable under the first sentence of § 605(a) "for divulging [a] communication that it was authorized to distribute on a limited basis only, when one of the recipients of that transmission was an unauthorized addressee of . . . the sender." Id.

Zuffa's allegations establish Black Diamond's liability under the third sentence of § 605(a). Although Zuffa "contracted with distributors authorized . . . for the right to

obtain a transmission of [the Broadcast]," Black Diamond never purchased a license from Zuffa. <u>Nat'l Satellite Sports, Inc.</u>, 253 F.3d at 915. Black Diamond does not dispute that it used an illegal satellite receiver, misrepresented its business as a residence, or removed an authorized receiver from "one location to a different business location" to intercept the Broadcast. (Compl. ¶ 19.) Those undisputed allegations are sufficient to satisfy § 605(a).

## 2. Section 553(a)(1)

Subsection 553(a)(1) of Title 47 of the United States Code provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." <u>Joe Hand Promotions, Inc. v. RPM Mgmt. Co. LLC</u>, No. 1:10 CV 00535, 2011 U.S. Dist. LEXIS 28210, at *5 (S.D. Ohio Mar. 18, 2011). Plaintiffs may recover either actual or statutory damages under § 553(c)(3), and if courts find that violations were committed willfully and for purposes of commercial advantage or private financial gain, damages may be increased by an amount of not more than $50,000. 47 U.S.C. § 553(c)(3).

Whereas "[section] 605 encompasses the interception of satellite transmissions 'to the extent reception or interception

11

occurs prior to . . . [the] distribution of the service over a cable system,'" once a satellite transmission reaches a "cable system's wire distribution phase, it is subject to § 553 and is no longer within the purview of § 605." TKR Cable Co. v. Cable City Corp., 267 F.3d 196, 207 (3d Cir. 2001) (quoting H. R. Rep. No. 98-934, at 83, reprinted in 1984 U.S.C.C.A.N. at 4720); accord Joe Hand Promotions, Inc., 2011 U.S. Dist. LEXIS 28210, at *6. Congress' language "clearly demonstrates that it created § 553 to combat significant, novel, and previously unaddressed threats to the continued growth of the cable industry." Id. Section 553 is a strict liability offense with no good faith defenses. J&J Prods. v. Schmalz, 745 F. Supp. 2d 844, 850 (S.D. Ohio 2010) (noting that the Sixth Circuit has not "specifically addressed the issue of whether" § 553 is a strict liability statute, but recognizing that persuasive authority supports strict liability); Easterling, 2009 U.S. Dist. LEXIS 52517, at *4; accord Sykes, 997 F.2d at 1004. Although not a factor in establishing liability under § 553, "intent is relevant to the calculations of plaintiff's remedies." Joe Hand Promotions, Inc. v. Williams, No. 3:07-CV-406-JDM, 2009 U.S. Dist. LEXIS 10654, at *2 (W.D. Ky. Feb. 10, 2009).

Unauthorized interceptions and broadcasts of satellite or cable transmissions violate § 553. See Entm't by J & J v. Al-Waha Enters., 219 F. Supp. 2d 769, 774 (S.D. Tex. 2002)

(collecting cases). In Al-Waha Enters., the plaintiffs relied on two affidavits that established Al-Waha's unauthorized rebroadcasting of a pay-per-view boxing match. Id. at 774-75. The district court found Al-Waha's actions constituted unauthorized interception and broadcasting of a cable transmission in violation of § 553. Id. at 774-75.

Zuffa's undisputed allegations establish Black Diamond's liability under § 553(a). Zuffa alleges that Black Diamond "willfully and illegally intercepted [the Broadcast] when it was distributed and shown by cable television systems." (Compl. ¶ 28.) Zuffa's supporting affidavits establish that investigators "observed a broadcast of [the UFC fight] over [two] television monitors at [the Black Diamond] in the presence of approximately [36] patrons." Al-Waha Enters., 219 F. Supp. 2d at 775; see also (Ex. C.) Zuffa "had the exclusive, proprietary right to exhibit and sublicense exhibition of [the Broadcast] to close circuit locations in the State of [Tennessee] and [Black Diamond] did not obtain authorization from [Zuffa] to display the [Broadcast]." Al-Waha Enters., 219 F. Supp. 2d at 775; see also (Ex. A.) Zuffa's "uncontroverted . . . evidence establishes that [Black Diamond] violated" § 553(a). Al-Waha Enters., 219 F. Supp. 2d at 775.

### 3. 17 U.S.C. § 501(a)

Subsection 501(a) of Title 17 of the United States Code provides that "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright or right of the author."  The Copyright Act protects "proprietary rights in the context of cable transmissions . . . [because] infringement encompasses the unauthorized performance or display of motion pictures or other audiovisual works . . . [and] the statute explicitly prohibits infringement in the context of secondary transmissions by cable systems."  Prostar v. Massachi, 239 F.3d 669, 677 (5th Cir. 2001) (citations omitted); see also 17 U.S.C. §§ 501(c)-(e).

The Copyright Act provides that "the owner of a copyright . . . has the exclusive rights to . . . distribute copies of the copyrighted work." (Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62 (1st Cir. 2002) (citations omitted); see also Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 843 (11th Cir. 1990) ("Public distribution of a copyrighted work is a right reserved to the copyright owner, and usurpation of that right constitutes infringement.").  "To succeed in a copyright infringement action, a plaintiff must establish that he or she owns the copyrighted creation, and that the defendant copied it."  Murray Hill Publ'ns., Inc. v. Twentieth Century Fox Film Corp., 361 F.3d 312, 316 (6th Cir. 2004) (quoting Kohus v. Mariol, 328 F.3d 848, 853 (6th Cir. 2003)).  "The unauthorized

access and retransmission of cable broadcasting . . . [is] mere copying." Prostar, 239 F.3d at 677.

The "damage provision under the Copyright Act in 17 U.S.C. § 504(c) provides [] statutory damages 'for all infringements involved in the action, with respect to any one work, for which any infringer is liable.'" Nat'l Satellite Sports, Inc. v. Carrabia, No. 4:01 CV 1474, 2003 U.S. Dist. LEXIS 27198, at *13-14 (N.D. Ohio Mar. 11, 2003). Offenders are liable in "the sum of not less than $750 or more than $30,000.00 as the court considers just." Id. "In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2); see also Joe Hand Promotions Inc. v. Orim, Inc., No. 1:10 CV 00743, 2010 U.S. Dist. LEXIS 107212, at *5-6 (N.D. Ohio Oct. 5, 2010).

Zuffa has established Black Diamond's liability for copyright infringement under 17 U.S.C. § 501(a). Zuffa alleges that it owns the copyright to the Broadcast, including all "undercard" matches and television programming via closed circuit television and encrypted satellite signal. (Compl. ¶ 32.) According to Zuffa, the Broadcast originated via satellite uplink and was subsequently retransmitted to cable systems and satellite companies. (Id.) Zuffa alleges that, as the holder

15

of proprietary rights for the Broadcast, it had the right to distribute the Broadcast in the manner it saw fit. (Id.) Black Diamond never obtained a license from Zuffa or its authorized agents to publicly exhibit the Broadcast. (Id. ¶ 34.) Zuffa alleges that the unauthorized exhibition of its Broadcast at The Black Diamond, where the bar charged a $5 cover charge and advertised the fight in its window, constituted "willful" violation of Zuffa's proprietary rights. (Id. ¶ 37; see also Privacy Affidavit Ex. C, ECF No. 15-1.)

## B. Statutory Damages

Zuffa seeks statutory damages for Black Diamond's Federal Communication Act violations, 47 U.S.C. §605(e)(3). (See Pl.'s Mem. of Law 15-17.)[2] Although Black Diamond is liable under 47 U.S.C. §§ 650(a) and 553, Zuffa may only recover (and only seeks to recover) under § 605(a). See J&J Sports Prods., Inc. v. Trier et al., No. 08-11159-BC, 2009 U.S. Dist. LEXIS 6415 (E.D. Mich. Jan. 29, 2009) ("Although Plaintiff brings causes of action under both § 605 and § 553, Plaintiff can only recover damages under one or the other.") (citing J&J Sports Prods., Inc. v. Ribeiro, 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008) ("Where a defendant is found liable under both § 553 and § 605,

---

[2] In its complaint, Zuffa requests statutory penalties for Black Diamond's allegedly willful violations of 47 U.S.C § 605(a), 47 U.S.C. § 553, and 17 U.S.C. § 501(a), as well as attorney's fees, interest, and costs. (Compl. ¶ 40.) In its Memorandum of Law, however, Zuffa requests damages for Black Diamond's allegedly willful violation of 47 U.S.C. § 605(a) and full costs, including attorney's fees. (Pl.'s Mem. of Law 16.)

a plaintiff is entitled to have damages awarded under § 605, which provides for greater recovery.")); (see also Pl.'s Mem. 9)("Plaintiff elects to recover under [§] 605(a).").

47 U.S.C. § 605(e)(3) provides that "[a]ny person aggrieved by any violation of [§ 605(a)] . . . may bring a civil action in United States district court." The term "any person aggrieved" includes "any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming." § 605(d)(6) (emphasis added); see also Nat'l Satellite Sports, Inc., 253 F.3d at 914 (finding that two parties had proprietary rights to a cable broadcast and could therefore sue under § 605).

"In determining the amount of [statutory] damages to award under §605, the Court possesses wide discretion." Leaghty, 2011 U.S. Dist. LEXIS 87971, at *8 (citing Buckeye Cablevision, Inc. v. Sledge, No. 3:03CV7561, 2004 U.S. Dist. LEXIS 7578, at *4 (N.D. Ohio Apr. 8, 2004)); see also Willis, 2009 U.S. Dist. LEXIS 10071, at *2. Within the limits established by Congress, statutory damages may be any sum that "the court considers just." See 47 U.S.C. § 605(e)(3)(C)(i)(II).

By electing statutory damages, Zuffa may recover "in a sum of not less than $1,000 or more than $10,000." 47 U.S.C. § 605(e)(3)(C)(i)(II). "In any case in which the court finds that the violation was committed willfully and for purposes of direct

17

or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a)." Id. at § 605(e)(3)(C)(ii). In determining willfulness, courts have evaluated a number of factors, including the size of the commercial establishment, whether the commercial establishment advertised or charged an admittance fee, the number of televisions that showed the transmissions, and increases in food or beverage prices during exhibitions. See Orim, 2010 U.S. Dist. LEXIS 107212, at *7–8; Lukes, 2010 U.S. Dist. LEXIS 110421, at *6–8; Carrabia, 2003 U.S. Dist. LEXIS 27198, at *4; Easterling, 2009 U.S. Dist. LEXIS 52517, at *15–16; Joe Hand Promotions, Inc. v. Willis, No. 5:08 CV 2786, 2009 U.S. Dist. LEXIS 10071, at *2 (N.D. Ohio Feb. 11, 2009); Lukes, 2010 U.S. Dist. LEXIS 110421, at *6–8.

Zuffa requests $55,000 in damages, which includes $10,000 in statutory damages under § 605(e)(3)(C)(i)(II) and $45,000 in enhanced statutory damages under § 605(e)(3)(C)(ii). (See Pl.'s Mem. 13.) Zuffa asks for the statutory maximum of $10,000 because "the licensing of sporting events to establishments that want to exhibit [] events as they occur[] is less valuable when pirates exhibit the events [] to patrons who would otherwise be in the establishments of [Zuffa's] legitimate licensees." (Id.

18

11-12.)  Although Zuffa does not explain why the maximum amount should be awarded, it urges "that a sum greater than the licensing fee is appropriate" because Zuffa has lost the licensing fee that it would have otherwise received from Black Diamond and surrounding establishments.  (Id. at 12.)

Plaintiff's request for $10,000 in statutory damages is not well taken.  There must be "egregious circumstances before awarding maximum statutory damages."  Sledge, 2004 U.S. Dist. LEXIS 7578, at *6.  Based on the rate card provided by Zuffa, the company would have received $1,100 if Black Diamond had purchased the Broadcast properly.  (Pl.'s Mem. 12) (citing Ex. A, ECF No. 15-1.)  Other factually similar decisions from within this Circuit support awarding damages based on a company's rate card.  Lukes, 2010 U.S. Dist. LEXIS 110421, at *6 (awarding the plaintiff $1,500 in statutory damages based on the rate card); Leaghty, 2011 U.S. Dist. LEXIS 87971, at 9 (awarding the plaintiff $1,200 in statutory damages based on the rate card); Willis, 2009 U.S. Dist. LEXIS 10071, at *2 (awarding the plaintiff $875 in statutory damages based on the rate card).  The Court awards Zuffa $1,100 in statutory damages for Black Diamond's one unauthorized interception of the Broadcast.  See Lukes, 2010 U.S. Dist. LEXIS 110421, at *6.

Zuffa requests $45,000 in enhanced statutory damages because Black Diamond exacted a cover charge from patrons and

publicly advertised the Broadcast. (Id. at 13.) Zuffa contends that neither the public exhibition of the Broadcast nor the descrambling of its satellite signal could have occurred without Black Diamond's conduct. See Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously" and television sets do not "connect themselves to cable distribution systems."). Black Diamond's commercial advantage, Zuffa alleges, can be fairly and reasonably inferred from its status as a commercial establishment. (Pl.'s Mem. 14); see also Joe Hand Promotions, Inc. v. Cat's Bar, Inc., 2009 U.S. Dist. LEXIS 20961 (C.D. Il. March 16, 2009). Zuffa's request for enhanced statutory damages is well taken, but $45,000 is excessive.

Willfulness has been defined as the "disregard for the governing statute and an indifference to its requirements." Sledge, 2004 U.S. Dist. LEXIS 7578, at *4. "For purposes of § 605, courts have identified conduct as 'willful' where there were repeated violations over time, or there was a sophisticated understanding of the satellite programming industry and there was a violation of the statutes that regulate the conduct." Id. at *5.

At least two facts weigh against finding willfulness. Although The Black Diamond's capacity is eighty-eight patrons, Zuffa's auditors counted no more than thirty-six patrons at any

given time.  See Lukes, 2010 U.S. Dist. LEXIS 110421, at *7.
There is no evidence of "increased food and/or drink prices . .
. which would have presented some evidence of commercial
advantage or financial gain." Leaghty, 2011 U.S. Dist. LEXIS,
at *12.  Based on these facts, it would appear "unlikely that
[Black Diamond] received a substantial monetary gain by []
receiving the plaintiff's satellite programming without its
authorization." Sledge, 2004 U.S. Dist. LEXIS 7578, at *7.

Two facts in this case warrant a finding of willfulness.
First, courts make clear that charging an admittance fee is
direct evidence of willfulness.  See, e.g., Leaghty, 2011 U.S.
Dist. LEXIS, at *12.  Black Diamond charged a $5 "cover charge"
for admission on the night of the Broadcast.  Second, Black
Diamond advertised its exhibition of the Broadcast.  These two
facts distinguish this case from others within this circuit
where willfulness was not found.  See Lukes, 2010 U.S. Dist.
LEXIS 110421, at *7; Leaghty, 2011 U.S. Dist. LEXIS, at *12;
Sledge, 2004 U.S. Dist. LEXIS 7578, at *7.  Black Diamond's
actions were willful.

Zuffa seeks $45,000 in enhanced statutory damages based on
Black Diamond's willful conduct.  Zuffa provides no authority to
support that amount.  Forty-five thousand dollars is
approximately forty times the revenue Zuffa would have received
had Black Diamond paid Zuffa's licensing fee.  Although

deterring future violations is a goal in awarding damages under §605, Al-Waha Enters, 219 F. Supp. 2d at 776, $45,000 is excessive in light of the facts of this case. Black Diamond charged a $5 cover charge for a clientele that did not exceed 36 on the night of the Broadcast. (See Ex. A, ECF No. 15-1; Ex. C, ECF No. 15-1.) Black Diamond's minimum profit was $150, an amount that does not include fluctuations in attendance during the evening or increases in food and drink sales that may have occurred.

The Court has considerable discretion in imposing proper damages. After evaluating the entire record, $7,500 is a reasonable statutory enhancement. Zuffa's statutory damages of $1,100 will be increased by $7,500 for a total of $8,600.

### C. Costs and Attorney's Fees

Zuffa seeks to recover $2,200.75 in costs and attorney's fees. (See Pl.'s Mot. 3.) Under 47 U.S.C. § 605(e)(3)(B)(iii), the district court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." Zuffa supports the amount of its proposed award with an affidavit from its attorney. (See Att'y Aff. In Supp. of Default and Costs and Fees at 4-5, ECF No. 15-3.) Having reviewed the affidavit and other supporting materials, the Court is satisfied that the requested fees and costs are reasonable. Zuffa is awarded $2,200.75 in costs and attorney's

fees.  <u>See</u> <u>Lukes</u>, 2010 U.S. Dist. LEXIS 110421, at *8 (awarding $1,900 in costs and attorney's fees).

**V.    Conclusion**

For the foregoing reasons, Zuffa's Motion is GRANTED.

It is therefore ORDERED that:

(1)  Black  Diamond  is  liable  to  Zuffa  for  $1,100  in statutory damages.

(2)  Black  Diamond  is  liable  to  Zuffa  for  $7,500  in enhanced statutory damages.

(3)  Black  Diamond  is  liable  to  Zuffa  for  $2,200.75  in costs and attorney's fees.

So ordered this 14th day of December, 2011.


                              s/ Samuel H. Mays, Jr.__
                              SAMUEL H. MAYS, JR.
                              UNITED STATES DISTRICT JUDGE